## Campbell v. Mims.

(Decided June 14, 1912.)

### Appeal from Boyd Circuit Court.

Partnership—Estoppel—Debtor and Creditor.—Where one owning a large body of land purchases certain other land jointly with another, and takes title thereto in his own name, with the understanding that the other party is not to be known in the transaction, and on becoming involved, receivers are appointed to take charge of both his individual lands and the partnership lands, and both the individual lands and partnership lands are sold to pay his debts, and several years thereafter he repurchases the partnership lands, the failure of the silent partner to claim the partnership at a time when it might have subjected him to liability, precludes him from thereafter claiming that the partnership existed. In such a case, the two partners will be treated as debtor and creditor, and the silent partner is entitled to recover of the other that part of the purchase price which he furnished to pay for the lands.

DINKLE & PRITCHARD, PROCTER K. MALIN for appellant.

GEO. B. MARTIN, T. L. EDELEN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on Original and Cross Appeal.

For a number of years, appellee, A. Mims, was engaged in the wholesale hardware business in Catletts-

burg, Kentucky.  Appellant, A. W. Campbell, was engaged in buying lands and marketing the lumber thereon. During the month of October, 1895, Campbell and Mims entered into a contract to buy of J. N. Watkins a tract of about two thousand acres of timber land on Paw Paw fork of Knox creek, in Buchanan County, Virginia.  The contract provided that the purchase price was to be $10,000, of which $2,000, was to be paid in cash, one-half by each, and the balance of $8,000 to be evidenced by notes payable in installments and in equal proportions by the parties to the agreement.  The title to the property was to be taken in Campbell's name, and the contract provided in case of the death of Campbell, Mims was to take charge of the lands and dispose of them. On July 29, 1896, Campbell and Mims entered into a supplemental agreement for the purpose of setting forth the status of affairs between them with reference to the timber that had been cut, and for the purpose of settling more definitely their relations with respect to the land purchased.  By this agreement it appeared that the land consisted of two tracts, one about 437 acres, and the other of from 1,600 to 1,800 acres.

In addition to the partnership land, Campbell had other very extensive timber rights on Knox creek. Campbell had a contract with the Yellow Poplar Lumber Company by which he agreed to deliver to that company five million feet of lumber per year. In event of his failure to deliver that number of feet within the time specified, he was to pay to the Yellow Poplar Lumber Company $2.00 per thousand feet for the deficit.  For the purpose of carrying out his contract, Campbell constructed a tramway about thirty miles in length, erected several mills, and established a number of stores.  Campbell became involved, and it being apparent that he was about to lose a large amount of money on his contract with the Yellow Poplar Lumber Company, a number of his creditors, including Mims, held a meeting looking to the appointment of a receiver.  Mims and the other creditors first secured judgment in the Mingo Circuit Court, of West Virginia.  Thereafter Harvey, Hagen & Company, a creditor, brought suit in the United States Circuit Court at Charleston, West Virginia, for the appointment of a receiver to take charge of Campbell's property. To this action Mims and other creditors were made parties.  G. N. Biggs and T. R. Brown, who up to that time had been one of Mims' attorneys, were appointed

receivers. They were directed to, and did, take charge of all of Campbell's property, including the 2,000 acres of land purchased by Campbell for his and Mims' joint account, and in controversy in this action. Mims presented a claim for $8,790, for merchandise furnished Campbell. The attorneys who brought the receivership proceedings represented the creditors. Pending the proceedings, all of Campbell's property, including the Campell-Mims partnership tract of 2,000 acres of land, was sold to the Knox County Lumber Company. The deed was made by the receivers and Campbell and wife. After the execution of this deed, an order was entered in the court where the receivership proceedings were pending, confirming the sale. The purchase price for the land was paid by the Knox Creek Lumber Company. The proceeds were turned over to the receivers, and, after the payment of costs and attorneys' fees, prorated among the creditors, including Mims. The creditors received about 82 cents on the dollar. Subsequently the Knox Creek Lumber Company conveyed the partnership lands to the W. M. Ritter Lumber Company. On September 22, 1906, Campbell purchased the partnership lands from the W. M. Ritter Lumber Company and that company made to him a deed to the property.

Mims brought this action against Campbell, alleging that he was the owner of an undivided one-half interest in the lands in question, and asked for a settlement of the partnership. He also prayed for an injunction restraining Campbell from disposing of the land. A temporary injunction was granted. Application was made to Judge E. C. O'Rear, then a member of this court, to dissolve the injunction. On the hearing of that motion, the judges of the Western Division sat with Judge O'Rear. Judge O'Rear delivered the following opinion:

"This case, pending in the Boyd Circuit Court, is before me on a motion to dissolve an injunction granted by his Honor, Circuit Judge Kinner, restraining the defendant from selling, conveying or mortgaging certain real property mentioned in the petition, which it is alleged is partnership property, owned by plaintiff and defendant, as co-partners, and which, it is further alleged, the defendant was threatening to mortgage or dispose of for his sole benefit, the title being vested in him by the partnership agreement.

"The amount involved is large, and the question of

law somewhat unusual. I have invited my associates, of the Western Division of the Court of Appeals, to sit with me in hearing this motion. They have done so. The conclusion herein announced is the result of the conference, and joint hearing.

"We are of the opinion that the proceeding in the U. S. Circuit Court in West Virginia, to which plaintiff was a party, concludes his rights in this property, in so far as having it treated as partnership property is concerned. It is manifest that at the time plaintiff was not willing to have the possible losses of their joint logging enterprise visited upon him, and consequently he and defendant let this partnership property go into the estate of defendant, then being administered for the benefit of all defendant's creditors by the U. S. Court of the West Virginia District, and all the liabilities incurred in the project be presented as defendant's sole liabilities. The property now in litigation was fully described, and in the sale by the receivers and defendant, to which plaintiff assented, was openly conveyed. Defendant put his personal services and his knowledge of the business and properties and many years into working something out of his assets, procuring an arrangement by which others furnished enough money to satisfy his creditors. His enterprise was a doubtful one. He alone (and his financial backers) took the chances in the matter. Plaintiff remained quiet. Now after many years of labor and vicissitude of fortune, defendant has so managed the whole of his original assets as to reimburse his backers, and to get back some of the property which they took over, including that now in litigation in this suit. We see nothing in defendant's conduct that was misleading to plaintiff or that was unfair. Plaintiff elected to take the position when defendants affairs were greatly complicated, and seemingly hopelessly involved, promising a loss in this enterprise, to have this affair and property treated as defendant's alone. Now when good fortune has turned it in defendant's favor plaintiff ought not to be allowed to change his attitude.

"But the majority of the judges consulted think defendant ought to pay plaintiff the one thousand dollars, and interest, which was embarked in the enterprise by him. The order of injunction will be, therefore, and is hereby modified so as to restrain defendant from disposing of the property until he has paid or secured the

payment of the $1,000 and legal interest thereon, put into the property by plaintiff when it was bought.''

Thereafter, considerable evidence was heard, and the case tried on its merits. Judgment was entered in favor of Mims for the sum of $1,000, with six per cent interest thereon from October 3, 1895, the date of his contract with Campbell, and costs. From that judgment Campbell appeals and Mims prosecutes a cross-appeal.

From Mims it is contended that Campbell acquired title to the property in controversy in trust for Mims; that he was ignorant of the fact that the partnership land was involved in receivership proceedings, and did not know that the land was sold in that action; that as Campbell subsequently acquired the property, the trust continued, and that on a proper settlement of the partnership accounts, Campbell is indebted to him in a large sum. On the other hand, Campbell, on his cross-appeal, insists that if the effect of the receivership proceedings was to dissolve the partnership, the partnership should be settled as of that date, and upon a proper settlement, Mims is indebted to him in a large sum.

While it is true the opinion of Judge O'Rear on the motion to dissolve the injunction is not conclusive of the questions involved, yet upon a consideration of the whole case, we see no reason to depart from the views therein announced. Appellant was a party to the receivership proceedings. The attorneys who brought that action represented him and the other creditors. The deed to the Knox Creek Lumber Company was made by the receivers and Campbell and wife, and confirmed by order of court. In this conveyance the partnership lands were included. During the pendency of the proceedings, Mims did not in any way claim the land as partnership property. As the costly improvements made by Campbell were for the benefit both his individual lands and the partnership lands, Mims might have been liable for a large portion of such indebtedness. He refused to recognize the partnership property as partnership property at a time when if the fact had been known, it might have subjected him to liability. Indeed, both he and Campbell elected to treat the property as the individual property of Campbell. Having done that, we now hold that Mims is precluded from claiming that a partnership existed, and not that the partnership was dissolved by the receivership proceedings. That being true, Camp-

bell and Mims should be treated merely as creditors and debtor, and Mims is, therefore, entitled to recover the $1,000 which he furnished Campbell on October 3, 1895, to pay for the land, together with interest from that date.

This conclusion makes it unnecessary for us to consider the many questions discussed in the briefs of counsel.

Judgment affirmed both on original and cross appeal.